**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO.: 06-22311-CIV-SEITZ/MCALILEY**

LOURDES MURO, an individual,

        Plaintiff,

vs.

HERMANOS AUTO WHOLESALERS, INC.,
a Florida corporation, doing business as
"The Car Shack,"

        Defendant.

_____/

## MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff, Lourdes Muro, an individual ("Ms. Muro"), by and through her undersigned

attorney, pursuant to Rule 56, Federal Rules of Civil Procedure, and Rule 7.5, Local Rules of the

United States Court, Southern District of Florida, respectfully moves this Court for partial

summary judgment as to Count I (Action for Violation of the Truth in Lending Act), and Count II

(Action for Violation of Article IX, Uniform Commercial Code) of her Complaint against

Defendant, Hermanos Auto Wholesalers, Inc., a Florida corporation, doing business as "The Car

Shack" ("The Car Shack" or "Dealership"), as there is no genuine issue as to any material fact as

to liability or damages as to said claims and the Plaintiff is entitled to a judgment as a matter of

law.

## MEMORANDUM OF LAW

## I.   SYNOPSIS OF COMPLAINT ALLEGATIONS

This is an action for violation of 15 U.S.C. §1640, known more commonly as the "Federal

Truth in Lending Act" ("TILA"), together with pendant state law claims. According to the allegations of the Complaint, Ms. Muro purchased and financed a used 2002 Jaguar X-Type automobile ("Vehicle") from The Car Shack on September 17, 2005.  At the time of the purchase of the Vehicle, the Dealership agreed to finance the Vehicle through monthly installment payments at an interest rate of 17.95%.  In furtherance of her agreement to purchase the Vehicle, Ms. Muro paid the sum of Five Thousand Forty Dollars ($5,040.00) as and for a downpayment for the Vehicle ("Downpayment").  All terms and conditions of the transaction to purchase and finance the Vehicle — including the terms of the extension of credit — were set forth in a written purchase and finance agreement attached to the Complaint as Exhibit "A" ("Purchase and Finance Agreement").

Ms. Muro has further alleged that subsequent to the delivery of the Vehicle and payment of the Downpayment to the Dealership, the Dealership attempted to change the terms of the transaction by informing Ms. Muro of materially different and adverse financing terms. After Ms. Muro refused to agree to different finance terms, the Dealership repossessed the Vehicle from Ms. Muro, who ultimately lost her Downpayment.

In her Complaint, Ms. Muro has alleged that the Dealership has violated the TILA and Florida Statutes §520.01, known more commonly as the "Florida Motor Vehicle Retail Sales Finance Act" ("FMVRSFA"), with respect to the terms of the financing of the Vehicle. Additionally, as a result of the sales practices of the Dealership, Ms. Muro seeks statutory damages under Florida Statutes §679.01, *et sequi*, Article IX, Part VI, Uniform Commercial Code ("UCC"), with respect to the failure of the Dealership to dispose of the Vehicle in a commercially reasonable manner, including the providing of the statutorily required notice of

2

sale.

## II.  STANDARD OF REVIEW

The standard for summary judgment is found in Rule 56, Federal Rules of Civil

Procedure:

> "[Summary Judgment] . . . is to be granted forthwith if the pleadings, depositions,
> answers to the interrogatories and admissions on file, together with the affidavits,
> if any, show that there is no genuine issue as to any material fact and that the
> moving party is entitled to judgment as a matter of law.

Summary judgment is to be granted "only where the moving party is entitled to judgment

as a matter of law, where it's quite clear what the truth is . . . [and where] no genuine issue

remains for trial, . . . [for] the purpose of the rule is not to cut litigants off from their right to trial

by jury if they really have issues to try."  Poller v. Columbia Broadcasting System, 368 U.S. 464,

467, 82 S.Ct. 486 (1962); See, also, Lansing Dairy, Inc. v. Espy, 39 F.3d 1339, 1347 (6th

Cir.1994). Moreover, the purpose of the procedure is not to resolve the actual issues, but to

determine if there are genuine issues of fact to be tried. Lashlee v. Sumner, 570 F.2d 107, 111 (6th

Cir. 1978). The court's duty is to determine only whether there is sufficient evidence that has

been presented to make the issue of fact a proper question for the jury; it does not weigh the

evidence, judge the credibility of witnesses, or determine the truth of the matter. Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 249; 106 S.Ct. 2505 (1986).

In the instant case, as detailed below, there are no issues of material fact with respect to

claims of Ms. Muro under TILA and the UCC.  The record consists of *inter alia* the deposition of

the corporate designee of The Car Shack, Ernesto Sanchez, taken on July 10, 2007 ("Sanchez

Deposition"), a copy of which is filed contemporaneous herewith.  After reviewing every

possible inference in favor of The Car Shack, Ms. Muro is entitled to final summary judgment relief as to the aforementioned claims based on the record evidence and substantive case law authority.

### III.  STATEMENT OF MATERIAL FACTS

Pursuant to Rule 7.5, Local Rules of the United States District Court, Southern District of Florida, the following statements of fact are not controverted based on the record:

A.    Background Facts Concerning Purchase and Finance Transaction:

Pursuant to the Joint Scheduling Report (DE 7), the following facts were stipulated between the parties:

1.    That the Dealership is in the business of selling used motor vehicles.

2.    That the Dealership provided to Ms. Muro disclosures concerning the terms of financing in the form of Exhibit "A" attached to the Complaint.

3.    That Ms. Muro paid the Downpayment to the Dealership.

4.    That after payment of the Downpayment, the Dealership delivered the Vehicle to Ms. Muro.

5.    That subsequent to payment of the Downpayment and delivery of the Vehicle to Ms Muro, the Dealership informed Ms. Muro that the terms of financing would be different than those set forth in Exhibit "A" attached to the Complaint.

6.    That the Dealership repossessed the Vehicle subsequent to delivery to Ms. Muro.

B.    As to Claim of Plaintiff Under the Truth in Lending Act, 15 U.S.C.§1601, *et sequi*:

1.    As part of the transaction to purchase and finance the Vehicle, Ms. Muro was required to sign the Purchase and Finance Agreement which set forth the terms of the purchase

4

and finance transaction for the Vehicle (Sanchez Deposition - p. 32, 1.23 to p. 33, 1.19; Exhibit

6).

2.       The Purchase and Finance Agreement contained the following verbatim

disclosures concerning the terms of financing:

| APR | FINANCE CHARGE | TOT PAYMENTS |
|---|---|---|
| 17.950% | 8,227.38 | 23,989.20 |

THE BALANCE IS TO BE PAID IN 60.00 PAYMENTS OF $399.82
DOLLARS. FIRST PAYMENT IS DUE ON 10/17/2005 AND MONTHLY

(Sanchez Deposition - Exhibit 6)

3.       The Purchase and Finance Agreement provided that the purchase price of the

Vehicle was Twenty Thousand Eight Hundred Three and 82/100ths Dollars ($20,803.82).

4.       The Purchase and Finance Agreement provided that a downpayment of Five

Thousand Forty-Two Dollars ($5,042.00) would be made by Ms. Muro (Sanchez Deposition -

Exhibit 6).

5.       The Purchase and Finance Agreement provided that the amount financed would

be Fifteen Thousand Seven Hundred Sixty-One and 82/100ths Dollars ($15,761.82) (Sanchez

Deposition - Exhibit 6).

6.       The Purchase and Finance Agreement provided the following:

PURCHASER (BUYER) AGREES THAT THIS ORDER
INCLUDES ALL OF THE TERMS AND CONDITIONS
HEREFORE, THAT THIS ORDER CANCELS AND
SUPERCEDES ANY PRIOR AGREEMENT WRITTEN OR
VERBAL. PURCHASE AGREES TO PAY THE TOTAL OF
PAYMENTS IN ACCORDANCE WITH THE PAYMENT
SCHEDULE SHOWN ABOVE. THIS ORDER SHALL NOT
BECOME BINDING UNTIL ACCEPTED BY THE DEALER OR
HIS OR HER AUTHORIZED REPRESENTATIVE.

(Sanchez Deposition - Exhibit 6)

7.      The Purchase and Finance Agreement was signed by both Ms. Muro and an authorized  representative of The Car Shack (Sanchez Deposition - p. 33, lines 9-11).

8.      Subsequent to the execution of the Purchase and Finance Agreement by the respective parties, The Car Shack informed Ms. Muro that the financing of the Vehicle would change from the terms set forth in the Purchase and Finance Agreement (Sanchez Deposition - p. 40, line 19 to p. 42, line 17).

9.      The Dealership attempted to increase the interest rate for the financing for the Vehicle from that set forth in the Purchase and Finance Agreement (Sanchez Deposition - p. 41, line 24 to page 42, line 17).

10.     Ms. Muro refused to sign any additional finance agreements for the financing of the Vehicle (Sanchez Deposition - p. 42, lines 20 to 21).

11.     Ms. Muro sent her first monthly payment of Three Hundred Ninety-Nine and 82/100ths Dollars ($399.82) to The Car Shack as required under the Purchase and Finance Agreement which was returned by The Car Shack (Sanchez Deposition - p. 44, lines 4-7).

C.      As to Claim for Violation of Article IX, Uniform Commercial Code (Count II):

1.      The Dealership repossessed the Vehicle from Ms. Muro (Sanchez Deposition - p. 44, lines 8 - 23).

2.      After Ms. Muro signed the papers to purchase and finance the Vehicle, Ms. Muro was required to insure the Vehicle (Sanchez Deposition - p. 46, line 11; p. 47, line 6).

3.      After the repossession of the Vehicle by The Car Shack, The Car Shack sent a notice ("Notice of Disposition") to Ms. Muro dated January 3, 2006 (Sanchez Deposition - p. 49,

6

lines -18; Exhibit 7).

4.      The Notice of Disposition did not comply with the requirements of the Uniform Commercial Code, Florida Statutes §§679.613, 679.614, and 679.623.

## IV.   LEGAL ARGUMENT

**A.      THE CAR SHACK HAS VIOLATED THE TRUTH IN LENDING ACT BY FAILING TO PROVIDE THE REQUIRED DISCLOSURES CONCERNING THE EXTENSION OF CREDIT.**

**1. The Dealership has violated the Truth in Lending Act by failing to provide the required disclosures prior to consummation.**

**a.   The TILA requires the creditor to disclose the cost of credit.**

Congress has delegated to the Federal Reserve Board ("FRB") broad authority to promulgate regulations necessary to render the Truth in Lending Act effective. Mourning v. Family Publications Service, Inc., 411 U.S. 356, 366, 93 S. Ct. 1652, 1658, 36 L.Ed. 318 (1973); 15 U.S.C. §1604(a).  Pursuant to the grant of this authority, the FRB implemented Regulation Z, 12 C.F.R. §226.1 *et sequi*.  In TILA actions, the court defers to the regulations interpreting the Act.  Begala v. PNC Bank, Ohio, National Association, 163 F.3d 948, 950 (6th Cir. 1998).  "We have repeatedly stated that TILA is a remedial statute and, therefore, should be given broad, liberal construction in favor of the consumer." *Id*. (citations omitted).

The TILA and Regulation Z each require the creditor in a closed-end credit transaction to make disclosures to the consumer of various items, including: the identity of the creditor; the *amount financed;* the *finance charge*; the *annual percentage rate*; the *total of payments*; and the *total sale price*.  15 U.S.C. §1638(a); 12 C.F.R. §226.18.

**b.   Disclosures must be made before the transaction is consummated.**

The TILA requires the creditor to make the described disclosures "before the credit is

7

extended." 15 U.S.C. §1638(b).  In this regard, Regulation Z states: "The creditor shall make

disclosures before the consummation of the transaction." 12 C.F.R. §226.17(b).

"Consummation" occurs when the "consumer becomes contractually obligated on a credit

transaction." 12 C.F.R. §226.2(a)(13). Whether or when a consumer becomes "contractually

obligated" is an issue of state law.  Official Staff Commentary §226.2(a)(13).

These written disclosures are the "barrier between the seller and the prospective

purchaser" discussed in <u>Mourning</u>, 411 U.S. at 377.  As required by the TILA and as recognized

by the United States Supreme Court's use of the phrase "prospective purchaser," the disclosures

must be given to a purchase who has not yet agreed to accept the credit; the consumer can only

shop for the best credit terms if the consumer receives disclosures before accepting the credit

terms.  The mandated language, terms and format of the written disclosures are what allow the

consumer to effectively compare the terms offered by competing lenders.

### c.  The transaction was consummated when the Purchase and Finance Agreement was signed by Ms. Muro.

In Florida, the procedural and substantive requirements necessary for the making of a

motor vehicle installment contract are prescribed in the under Florida Statutes Section 520.01, *et

sequi*, known more commonly as the "Florida Motor Vehicle Retail Sales Finance Act." It is the

position of Ms. Muro that the consumer credit transactions with the Dealership was

consummated when the Purchase and Finance Agreement was first signed by Ms. Muro.  It is

anticipated the Dealership will argue that consummation did not occur until the deal was

"funded,"  *i.e.*, not until the Purchase and Finance Agreement had been purchased by a third party

finance company.  The Dealership's argument regarding consummation must fail.

The Purchase and Finance Agreement which was completed by the Dealership and

presented to Ms. Muro purported to be a binding contract.  By her signature, Ms. Muro as a

consumer agreed to be bound by the terms of the contract.  While it is true that the contract may

have given the Dealership the right to assign its interest to a third party finance company, such a

right is germane to most contracts. The transaction was consummated when the consumer signed

the Purchase and Finance Agreement.

> ### d.  The defendant is the creditor in its retail installment transactions and is the one required to provide TILA credit disclosures.

The TILA provisions making the defendant the creditor extending credit are found at 15

U.S.C. §1638(a), 12 C.F.R. §§226.2(a)(17), 226.18(a).  Regulation Z Official Staff Commentary

gives the following example:

> An auto dealer and a bank have a business relationship in which
> the bank supplies the dealer with credit sales contracts that are
> initially made payable to the dealer and provide for the immediate
> assignment of the obligation to the bank.  The dealer and purchaser
> execute the contract only after the bank approves the
> creditworthiness of the purchaser.  ***Because the obligation is
> initially payable on its face to the dealer, the dealer is the only
> creditor in the transaction.*** §226.2(a)(17)(i)-2.
>
> (Emphasis added)

TILA and Regulation Z provide that "[t]he ***creditor*** shall make disclosures before

consummation of the transaction."  12 C.F.R. §226.17(b). (Emphasis added).  Likewise:

- 15 U.S.C. §1638(a) requires the ***creditor*** to make the TILA

    disclosures in credit transactions like the one in question.

- 12 C.F.R. §226.18 provides that "[f]or each transaction, the

    creditor shall disclose the following information as

    applicable.

- 12 C.F.R. §226.18(a) *Creditor*.  The identity of the creditor

9

making the disclosures (the defendant must disclose that it

is the creditor).

The anticipated position of the Dealership concerning consummation is without basis in

law or fact based on a plain reading of the Purchase and Finance Agreement and the salient fact

that the Purchase and Finance Agreement was binding and consummated upon execution of same

by Ms. Muro.  Pursuant to 12 C.F.R. §226.2(a)(13), "consummation" is defined as "the time **that

a consumer becomes contractually obligated on a credit transaction**." See, Cannon v. Metro

Ford, Inc., 242 F.Supp 2d 1322 (S.D. Fla. 2002) [contract was consummated for TILA purposes

upon execution of the finance agreement by consumer]; Nigh v. Koons Buick Pontiac GMC, 319

F.3d 119 (4th Cir. 2003)[consummation of credit transaction encompasses unfunded financing

agreement to which consumers contractually commit].

> **e.  Under well-reasoned and controlling 11th Circuit precedent,
> the practice of "spot-delivery" by The Car Shack violates
> the legal rights of Ms. Muro under the Truth in Lending Act.**

> ***i.  Review of Merger Doctrine***

In order to make the disclosure meaningful and to allow the consumer to compare the cost

of credit, TILA provides that all material disclosures be made before the consumer becomes

obligated.  15 U.S.C. §1638(b)(1) provides as follows:

> Except as otherwise provided in this part, the disclosure required
> under Subsection (a) of this Section shall be made before the credit
> is extended.shall be made before the credit is extended....

See, Copley v. Rona Enterprises, Inc., 423 F.Supp. 979 (F.D. Ohio 1976). ["Under this section,

disclosure is necessary prior to the time that buyer contractually binds himself to a set of

particular credit terms"].

The method by which The Car Shack provides disclosure of the terms of credit to Ms. Muro violates the congressional purpose under TILA because every credit term — in fact every contractual provision in every document — is made utterly meaningless and illusory.  From the misguided point of view of The Car Shack, there is absolutely nothing to prevent The Car Shack from increasing the costs of financial disclosures in any finance agreement at its whim.  Nothing, that is, except for TILA.

The Purchase and Finance Agreement contains a merger clause which is one of Defendant's express representations to Plaintiff:

> PURCHASER (BUYER) AGREES THAT THIS ORDER INCLUDES ALL OF THE TERMS AND CONDITIONS HEREFORE, THAT THIS ORDER CANCELS AND SUPERCEDES ANY PRIOR AGREEMENT WRITTEN OR VERBAL. **PURCHASER AGREES TO PAY THE TOTAL OF PAYMENTS IN ACCORDANCE WITH THE PAYMENT SCHEDULE SHOWN ABOVE**. THIS ORDER SHALL NOT BECOME BINDING UNTIL ACCEPTED BY THE DEALER OR HIS OR HER AUTHORIZED REPRESENTATIVE.

> (Sanchez Deposition - Exhibit 6)
> [emphasis added by Plaintiff]

It is a well established rule of law that parol or extrinsic evidence is inadmissable to vary, contradict, modify, add to, or subtract from an unambigous written contract when the action or defense is predicated upon such contract.  See, Swanson v. United-Greenfield Corp., 239 F.Supp. 299 (D. Conn. 1965).

The merger doctrine/parol evidence rule is found in the Restatement, *Contracts*, Second, §213:

> (1)    A binding integrated agreement discharges prior agreements to the extent that it is inconsistent with them.

11

(2)     A binding completely integrated agreement discharges prior agreements to the extent that they are within its scope.

(3)     An integrated agreement that is not binding or that is voidable and avoided does not discharge a prior agreement.  But an integrated agreement, even though not binding, may be effective to render inoperative a term which would have been part of the agreement if it had not been integrated.

In every one of Defendant's credit sales it is the Purchase and Finance Agreement that is the incorporating document because it was the transactional objective, i.e, to sell and finance a vehicle.  The Purchase and Finance Agreement not only contains a merger clause but it does not remotely refer to or describe any other document associated with the transaction.  Any other document would render every word in the Purchase and Finance Agreement meaningless.

### ii.   *Analysis of 11th Circuit Precedent Concerning "Spot-Delivery Bait & Switch"*

The Eleventh Circuit in <u>Bragg v. Bill Heard Chevrolet, Inc. - Plant City</u>, 374 F.3d 1060 (11th Cir. 2004), decided a case with nearly identical facts in reversing a dismissal by the district court.  Just as in the case at bar, Bragg signed papers to purchase and finance a vehicle.  The Court recited the following facts:

> Under "spot delivery," the customer is presented with a Purchase Agreement, RISC, and Bailment Agreement.  Bill Heard then delivers the car to the customer "on the spot" on the same date that the customer signs the documents, and allows him or her to take the car without the passage of title.  The customer in return typically makes a cash deposit or trades in an existing vehicle as a down payment.  Bragg contends that customers like him are "under the impression they have purchased a car under certain sales and finance terms."  On occasion, Bill Heard will notify a customer that it was not able to secure the financing rates agreed to in the documents and ask them to sign new agreements with less favorable financing terms.  If a new RISC is executed, the financing terms are calculated from the date of actual delivery of the vehicle to the customer.  According to Bragg, Bill Heard never executes the original RISCs.  Instead, it uses the initial lower financing rates to entice the customers under a "bait and switch"

12

> scheme.  Bragg also asserts that Bill Heard requires forfeiture of
> the downpayment or trade-in vehicle if the customer refuses to
> accept the new financing terms.
>
> Id. at 1063

Based on these very similar facts, the Court held that a credit transaction is completed for

TILA purposes as soon as the buyers sign the finance agreement just as in the instant case.  The

Court reasoned as follows:

> Bragg's signature on these documents rendered him contractually
> obligated to the purchase of credit and thus constituted
> consummation for the purposes of TILA disclsoures.  To give full
> effect to TILA's goal of providing meaningful and timely
> disclosure of important credit terms, we hold that in a financing
> agreement containing a condition precedent where the condition of
> obtaining financing is within the exclusive control of the seller and
> third party lender, consummation occurs when the consumer signs
> the contract.
>
> Id. at 1068

And further at 1068:

> Regardless of "the degree of commitment of the lender" contained
> in the agreements' condition precedent,.........Bragg's signature on
> these documents rendered him contractually obligated to the
> purchase of credit and thus constituted consummation for purposes
> of TILA disclosures.  To give full effect to TILA's goal of
> providing meaningful and timely disclosure of important credit
> terms, we hold that in a financing agreement containing a condition
> precedent where the condition of obtaining financing is within the
> exclusive control of the seller and third-party lender,
> consummation occurs when the consumer signs the contract.
>
> Id.

The well-reasoned ruling of the Bragg court should be applied in the instant case.  Thus,

the use of "spot delivery" does not merely violate TILA, it makes a mockery of TILA by

purporting to relieve the dealer from adhering to its terms.

According to The Car Shack, it is not a creditor, and argues that if it is not a creditor then

13

TILA is inapplicable.  Hence, according to The Car Shack, any creditor-seller in Florida or anywhere else in the United States can avoid TILA in its entirety simply by saying that it is not a creditor and get the hapless buyers to sign it.

Another holding to the same effect as <u>Bragg</u> is <u>Nigh v. Koons Buick Pontiac GMC, Inc.</u>, 319 F.3d 119 (4th Cir. 2003), *reversed on other grounds*, 543 U.S. 50, 125 S.Ct. 460 (2004).[1]  It was decided "[B]ecause of TILA's express purpose of protecting consumers from receiving inadequate disclosures prior to *their* entering in to credit transactions could not otherwise be effectuated.  If consummation, or extension of credit, does not encompass a consumer's commitment to a financing agreement that provides unilateral power for the creditor to execute the agreement later, creditors could intentionally provide faulty disclosures to consumers, obtain their commitment, and then afterwards provide accurate disclosures prior to closing the transaction, which if provided earlier might have dissuaded the consumer from accepting the credit, all without incurring TILA liability." <u>Id</u>. at 124.

Defendant's use of the "spot delivery" artifice effectively allows it to change any material term, including the year, make, and model of the subject motor vehicle simply by representing to the buyers that "financing was rejected."  The defendant then gives the buyers the Hobson's choice of signing a second finance agreement with different terms, even drastically different terms, or lose their newly purchased vehicle.  Worse, as it happened to Ms. Muro, the erstwhile buyers may lose their downpayment or trade-in if the auto dealership chooses unilaterally to

---

[1]  The U.S. Supreme Court reversed the 4th Circuit on the issue of statutory damages. The underlying rulings regarding liability were left undisturbed. <u>See</u>, <u>Nigh v. Koons Buick Pontiac GMC, Inc.</u>, 384 F.Supp. 2d 915 (E.D. Va. 2005) [ regarding sobering discussion on plaintiff attorneys fees in TILA matters].

14

cancel the financing contract.  This is unconscionable.  TILA was enacted to protect consumers

from dealers who would violate its provisions.

### 2.  Assuming arguendo that the practice of "spot delivery" by The Car Shack does not violate the Truth in Lending Act, The Car Shack is nonetheless liable for unclear, inconspicuous and unsegregated disclosures under Part B of the Act.

Part B of  TILA provides that all information which the Act requires to be disclosed

"shall be disclosed clearly and conspicuously" and that the terms "annual percentage rate" and

"finance charge" must be disclosed "more conspicuously" than all other disclosures in

information provided in connection with the transaction.  15 U.S.C. §1632(a); see, also, Reg. Z

Sections 226.5(a), 226.17(a).  See, Van Jackson v. Check 'N Go, 193 F.R.D. 544 (N.D. Ill.

2000); Donnelly v. Illini Cash Advance, Inc., 2000 WL 1161076 (N.D. Ill., 2000); contra, Brown

v. Payday Check Advance, 202 F.3d 987 (7th Cir. 2000), cert. denied, 531 U.S. 820 (2000).

Further, Regulation Z mandates that the creditor provide a brief description of what is meant by

the terms "amount financed," "finance charge," "total of payments," and "annual percentage

rate." Reg. Z, §221.18.

As reflected above, the truth in lending disclosures by The Car Shack within the Purchase

and Finance Agreement do not comply with the requirements of 15 U.S.C. §1632.  Accordingly,

a straightforward reading of the statute leaves no question that statutory damages are available

for the unclear and inconspicuous disclosures of The Car Shack.  See, e.g., Brown v. SCI Funeral

Services of Florida, Inc., 212 F.R.D. 602 (S.D. Fla. 2003)[class certification of 9,000 member

class for failing to more conspicuously disclose the "finance charge" and "annual percentage

rate"].

*                    *                    *

Under her TILA claim, Ms. Muro is entitled to recover actual damages pursuant to 15 U.S.C. §1640(a)(1) in the amount of the Downpayment. Additionally, Ms. Muro seeks maximum statutory damages of One Thousand Dollars ($1,000.00) pursuant to 15 U.S.C. §1640(a)(2), together with attorney's fees and costs.

**B.**   **THE NOTICE OF DISPOSITION USED BY THE CAR SHACK DOES NOT COMPLY WITH THE REQUIREMENTS OF ARTICLE IX, UCC, TO THE EXTENT THAT STATUTORY DAMAGES ARE PROPERLY AWARDED TO MS. MURO UNDER FLORIDA STATUTES SECTION 679.625(3)(b).**

**1.   Review of Uniform Commercial Code with respect to disposition of collateral.**

U.C.C. Article IX is the fundamental law regulating security interests and repossession of personal property. Article IX offers a framework for determining whether a creditor has a valid security interest, when and how it can repossess and dispose of collateral, and the rights of creditor and debtor after collateral's disposition. When a party enforces its remedies under Article IX, Part VI, but fails to comply with its requirements, Florida Statutes §679.625 specifies the remedies of a debtor. Actual damages are available for any Article IX violation. Further, if the collateral is consumer goods, §679.625(3)(b) makes minimum statutory damages available for almost any violation of Part VI, Article IX, including repossessions that breach the peace, defective notices of sale, and the failure to dispose of repossessed collateral in a commercially reasonable manner. Even technical violations, such as failing to provide proper notice of sale or obtaining a waiver prohibited by Article IX, can trigger the consumer remedies. See, e.g., Stoppi v. Wilmington Trust Company, 518 A.2d 82 (Del. 1986); Walker v. V.M. Box Motor Company, 325 So.2d 905 (Miss. 1976); Joyce v. Cloverbrook Homes, Inc., 344 SE 2d 58 (1986); Erdman v.

16

Rants, 442 NW 2d 441 (N.D.1989)][consumer entitled to damages under former U.C.C.§9-507 (now U.C.C. §9-625)for lack of notice even though sale was commercially reasonable].

The fundamental rule concerning the sale of repossessed property is that every aspect of the sale must be commercially reasonable, including the notice, method, manner, time, place and terms of the sale, and the accounting to the debtor for any surplus proceeds after the sale. Indeed, even the decision to repossess, when the cost of repossession or disposition far exceed the value of the collateral, may be found to be commercially unreasonable. *See*, e.g. First Fidelity Acceptance v. Hutchins, 717 A.2d 437 (N.J. Supra 1998).

Notwithstanding the importance of commercial reasonableness, the Uniform Commercial Code does not define "commercial reasonableness," leaving the decision to be determined on a case by case basis.  One commentator concerning the Uniform Commercial Code has equated commercial reasonableness with "good faith" or a "reasonable regard for the pledger's right." Grant Gilmore, Security Interest in Personal Property, §44.5 (1965); *see* also; Solfaneoli v. Core States Bank, 203 F. 3d 497 (3rd Cir. 2000) ["test to determine 'commercial reasonableness' should be whether the sale's every aspect is characterized by: (1) good faith, (2) avoidance of loss, and (3) an effective realization."]; In Re Emergency Beacon Corp, 48 B.R. 341 (Bankr.S.D. N.Y. 1985) [secured party must protect debtor's interest as well its own; cannot "dump" collateral in order to increase deficiency].

### 2.  The Car Shack was required to send the statutorily required notice of the sale or other disposition of the Vehicle.

Florida Statute Section 679.611 of the Uniform Commercial Code requires reasonable notice of the sale or other disposition of repossessed collateral.  The notice of sale is of utmost importance to the consumer. It tells a consumer when to expect loss of the property if actions are

not taken to redeem it or otherwise to prevent the sale. It informs the debtor of the kind of sale to be held and gives the debtor the opportunity to attend the sale or to persuade friends, relatives and others to attend the sale and bid, best reducing the size of any deficiency or increase in the surplus. *See*, e.g., In Re Hardy, 17 U.C.C. Rep. Serv. 633 (Bankr. N.D. Ohio 1975); HEW Federal Credit Union v. Battle, 772 A.2d 252 (D.C.2001); Thong v. M.H. Home Harbor, Inc., 3 S.W. 3d 377, 39 U.C.C. Rep. Serv. 2d 941 (Mont.C.T. App. 1999); Willington Trust Company v. Connor, 4015 A.2d 773, 28 U.C.C. Rep. Serv. 900 (Del. 1980). It informs the debtor of important rights, particularly in a consumer-goods transaction. Proper notice is an essential element of a commercially reasonable sale.

### 3.  Analysis of Defective Notice of Disposition by The Car Shack.

#### a.  Overview of UCC Violations.

To protect the consumer's valuable property interest in financing vehicles, Florida law imposes strict requirements on creditors following repossession. For purposes of the instant motion, these requirements are enumerated primarily under Florida Statutes §§679.613, 679.614 and 679.623.

#### b.  The Car Shack's Violations of §679.613.

Pursuant to §679.613(1), post-repossession notices must include:

a.      a description of the debtor and the secured party;

b.      a description of the property being disposed;

c.      the method of intended disposition;

d.      a statement that the debtor is entitled to an accounting of the unpaid indebtedness and the charge, if any, for an accounting; and

e.      the time and place of the public disposition or the time after which any other

disposition is to be made under Florida Statutes §679.613(1).

The Notice of Disposition violates §679.613(1) in that it does not contain any of the

required information other than the identification of the parties and the description of the

Vehicle.  Indeed, merely informing the consumer that his or her car may be disposed of does not

meet the law's requirement to state the intended method of disposition.  Landmark First National

Bank v. Gepetto's Tale O' the Whale of Fort Lauderdale, Inc., 498 So.2d 920, 922

(Fla.1986)[statutory notice provisions under Article IX pre-revision require creditors to advise

debtors whether a sale will be public or private]; People's Heritage Savings Bank v. Therault,

670 Atlantic 2d, 1391 (Me. 1996)[notice that indicated that the property would be disposed by

both public auction and private sale is inadequate.]

It is apparent on the face of the document that the Notice of Disposition contains three

indisputable failures to comply with the requisite statutory disclosures.  The violation of any one

of these requirements entitles Ms. Muro to judgment on her Article IX claim.  Moreover, revised

Article IX provides an extra element of protection for consumers subject to repossession,

contained in the additional requirements of §679.614 - requirements that The Car Shack also

failed to meet.

### c. The Car Shack's Violation of §679.614.

§679.614 requires that a notice of sale in consumer transactions must provide the

following information:

a.      the information specified in §679.613(1);

b.      description of any liability for a deficiency of the person to whom the notification

is sent;

        c.     a telephone number for which the amount that must be paid to the secured party to redeem the collateral under §679.6123; and

        d.     a telephone number or mailing address for which additional information concerning the disposition and the obligation secured is available.

Florida Statutes §679.614

"A notification that lacks any information set forth in Subsection (1) is insufficient as a matter of law." Florida Statutes §679.614, Comment 2.  The Notice of Disposition that The Car Shack sent to Ms. Muro violated *all* of the provisions of the applicable section.

### d.  The Car Shack's Violation of §679.623

One of the principal protections the law grants consumers is the right to redeem the repossessed vehicle right up until the eleventh hour, that is, anytime before the sale actually occurs.  Florida Statutes §679.623.  The Car Shack's notice improperly limits the redemption deadline to "10 working days from receipt of this notice."  The law is clear that a consumer has a right to redemption anytime prior to its subsequent disposition violates the requirements of the UCC.  Henry Johnson, 328 D.R. 234, 236 (Bkpt. M.D. Florida 2005)[the debtor's right to redeem may be exercised *at anytime* before the secured party disposes of, or enters into a contract for its disposition](emphasis added); In re: Menasch, 301 B.R. 757 (Bkpt. S.D. Florida 2003).

### 4.  The Failure of The Car Shack to Comply with the Requirements Set Forth in §§679.613, 679.614 and 679.623 Entitles Ms. Muro to a Mandatory Statutory Remedy.

The Car Shacks's failure to comply with its statutory notice obligations entitles Ms. Muro to a mandatory statutory remedy. The statute is clear and unambiguous: "[i]f the collateral is consumer goods, a person who was a debtor … at the time a secured party failed to comply with

20

this part may recover for that failure in any event an amount not less than the credit service charge plus 10 percent of the principal amount of the obligation or the time-price differential plus 10 percent of the cash price."  Fla. Stat. § 679.625(b). <u>Lee County Bank v. Winson</u>, 444 So.2d 459, 463 (Fla. Dist. Ct. App. 1983) ("statutory damages under § 679.507 are available when a debtor is in default and a creditor proceeds not in accordance with the provisions of Part V, Article Nine, of Florida's Uniform Commercial Code"); <u>In re Johnson</u>, 328 B.R. 234, 236 (Bankr. M.D. Fla. 2005) (noting that a creditor's violation of a debtor's right to redeem entitles the debtor to damages). <u>See also</u>, <u>Ogletree v. Brokers South, Inc</u>., 383 S.E.2d 900, 902 (Ga. Ct. App. 1989) ("Even if the consumer debtor does not prove a specific monetary loss but proves that the creditor did not comply with the statute, the debtor is entitled to recover the finance charge plus 10 percent of the principal amount of the contract if he or she proves those figures.") (citation omitted); <u>Chisholm v. Transouth Financial Corp</u>., 194 F.R.D. 538, 568 (E.D. Va. 2000) (holding that statutory minimal damages may be awarded "in any event" regardless of finding of actual injury).

The comments relating to Florida's Article IX statutory damage provision §679.625, instruct that subsection (3)(b) "provides a minimum, statutory, damage recovery for a debtor … in a consumer-goods transaction. It is patterned on former section 9-507(1) and is *designed to ensure that every noncompliance with the requirements of Part 6 in a consumer-goods transaction results in liability, regardless of any injury that may have resulted.*" Fla. Stat. § 679.625, comm. 4. (emphasis added).  As this comment makes clear, the language of subsection (3)(b) with respect to statutory damages reflects the Legislature's intent to give teeth to the notice provisions of Article IX in consumer-goods transactions by providing for statutory damages for *every* noncompliance, irrespective of the existence of a deficiency.

The post-repossession notice that The Car Shack sent to Ms. Muro indisputably violated the requirements set forth in Fla. Stat. § 679.601 *et seq*. The Car Shack's noncompliance entitles Ms. Muro to the mandatory statutory damages as set forth in Fla. Stat. § 679.625(3)(b). The statutory damages total Nine Thousand Eight Hundred Three and 55/100ths Dollars ($9,803.55) [finance charge of $8,227.30 plus 10% of the amount financed of $15,761.82 or $1,576.18]. Those damages obviously encompass a portion of the money Ms. Muro has paid The Car Shack under the Purchase and Finance Agreement. As such, Ms. Muro lays claim to her money, which she alleges that The Car Shack unjustly holds.

## V. CONCLUSION

As demonstrated by the record, The Car Shack engages in a "spot-delivery" practice which violates the requirements of the Truth in Lending Act. By telling consumers such as Ms. Muro that she is bound to the terms of the Purchase and Finance Agreement, and then subsequently attempting to change the terms of credit, The Car Shack has provided credit disclosures which are illusory and false. Moreover, such disclosures fail to comply with the requirements of Part B of the Truth in Lending Act with respect to being clear, conspicuous and segregated. Thus, Ms. Muro has established liability under TILA with respect to the financing of her vehicle.

With respect to her claim under the U.C.C., the evidence is undisputed that The Car Shack used a notice of its intended disposition of the subject automobile which fails miserably in complying with the requirements of the U.C.C. Accordingly, statutory damages flow from the failure to provide the proper and complete notice under Florida Statutes §609.625.

For the above reasons, judgment should be entered in favor of Ms. Muro as to her

claims for relief under Count I (TILA) and Count II (U.C.C.) of her Complaint, together with

attorney's fees and costs.

Respectfully submitted,


/s/ Robert W. Murphy
Robert W. Murphy
Florida Bar No. 717223
1212 S.E. 2nd Avenue
Ft. Lauderdale, FL 33316
(954) 763-8660 Telephone
(954) 763-8607 Telefax
E-mail: rphyu@aol.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 1, 2007, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on Aaron R. Sobel, Esquire, 2020 NE 163rd Street, Suite 300, North Miami Beach, FL 33162, in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic filing.

/s/ Robert W. Murphy
Robert W. Murphy
Florida Bar No. 717223
1212 S.E. 2nd Avenue
Ft. Lauderdale, FL 33316
(954) 763-8660 Telephone
(954) 763-8607 Telefax
E-mail: rphyu@aol.com