UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 06-22311-CIV-SEITZ/MCALILEY

LOURDES MURO, an individual,

        Plaintiff,

vs.

HERMANOS AUTO WHOLESALERS, INC.,
a Florida corporation, doing business as
"The Car Shack,"

        Defendant.
_____/

**REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT**

    Plaintiff, Lourdes Muro, an individual ("Ms. Muro"), by and through her undersigned attorney, pursuant to Rule 56, Federal Rules of Civil Procedure, and Rules 7.1C and 7.5, Local Rules of the United States Court, Southern District of Florida, files this her Reply Memorandum in Support of the Motion for Partial Summary Judgment (DE 18):

**I.  STATEMENT OF MATERIAL FACTS**

    It is the position of Ms. Muro that she provided a concise statement of material facts which was supported by the record. In contrast, The Car Shack failed to comply with the requirements of Rule 7.5C, Local Rules of the United States District Court, Southern District of Florida, with respect to providing a statement of material facts "supported by specific references to pleadings, depositions, answers to interrogatories, admissions, affidavits on file with the Court." Rule 7.5C, Local Rules of the United States District Court, Southern District of Florida.

1

Indeed, Ms. Muro would submit that the submission by The Car Shack is a blend of unsupported factual assertions, inadmissible hearsay and argument. As such, The Car Shack failed to comply with the requirements of the Local Rules to the extent that the Court may properly deem any controverted facts admitted.

## II.   LEGAL ARGUMENT

### A.   THE CAR SHACK WAS THE "CREDITOR" FOR PURPOSES OF THE EXTENSION OF CREDIT AND THEREFORE WAS SUBJECT TO THE REQUIREMENTS OF THE TRUTH IN LENDING ACT.

In its Memorandum, The Car Shack consumes much of its argument in attempting to convince the Court that it was somehow not a "creditor" for purposes of TILA. Such a position is without legal foundation. Moreover, the argument is contrary to the clear and unambiguous documents which flowed from the transaction which identified The Car Shack as the "creditor."

Automobile dealers such as The Car Shack seek to have the benefits of being a financier but without the duties and liabilities imposed by federal and state law. The Finance Agreement which was completed by The Car Shack and which was signed by Ms. Muro purported to be a binding contract. By her signature, Ms. Muro as a consumer agreed to be bound by the terms of the contract. While it is true that the Dealership may have had the right to assign its interest to a third party finance company, such right is germane to most contracts. The transaction was consummated when Ms. Muro signed the Finance Agreement. See, Polk v. Crown Auto, 222 F.3d 691 (4th Cir.2000)[dealership - seller required to make TILA disclosures]; see, also, Ramandan v. Chase Manhattan Corp., 229 F.3d 194 (3rd Cir. 2000) [discussion how TILA assignee liability trumps FTC holder notice; assignee lender was not liable for car dealer's

2

violations of TILA because of inaccurate disclosures were not apparent on the face of the assigned documents]; Nigh v. Koons Buick Pontiac GMC, Inc., 319 F.3d 119 (4th Cir. 2003), reversed on other grounds, 543 U.S. 50, 125 S. Ct. 460 (2004).

### B. THE CAR SHACK CANNOT AVOID LIABILITY UNDER TILA BASED ON "EQUITABLE DEFENSES."

In its Memorandum, The Car Shack — in an almost stream of conscious fashion — makes various assertions concerning the conduct of Ms. Muro subsequent to consummation of the credit transaction (Memorandum in Opposition p.4). Overlooking the fact that such "defenses" were not asserted in the pleadings [DE 4], equitable defenses such as unclean hands, as well as other defenses grounded in state law which are not specifically adopted by the federal statute, do not apply to claims brought under TILA. See, e.g., Purtle v. Eldridge Auto Sales, Inc., 91 F.3d 797, 800-802 (6th Cir.1996) [fraudulent endorsement of credit agreement was not a defense to TILA]; Semar v. Platte Valley Fed. Savings & Loan Association, 791 F.2d 699, 704-705 (9th Cir. 1986) [applying equitable principles "would frustrate the very purpose of TILA. Congress did not intend for TILA to apply only to sympathetic consumers. Congress designed the law to apply to all consumers, who are inherently at a disadvantage in a loan and credit transaction. As the Semars point out, most TILA plaintiffs are not model borrowers."].

### C. AS A RESULT OF THE EXECUTION OF TITLE PAPERS FOR THE VEHICLE AND DELIVERY OF SAME, MS. MURO BECAME THE OWNER OF THE VEHICLE AND THUS WAS ENTITLED TO THE PROTECTIONS OF ARTICLE IX, UCC.

In its Memorandum of Law, The Car Shack attempts to avoid liability under Article IX, U.C.C. by asserting: "the title [to the vehicle] was still in defendant's name, not the plaintiff's."

(Memorandum in Opposition - p.6). However, The Car Shack obscures the fact that title application had already been completed and the Vehicle was delivered. Indeed, according to the "timeline" referenced by Mr. Sanchez in his affidavit, which is attached to the Sanchez deposition as Exhibit 4, "we signed the … title application and other documents so Jonathan [Ms. Muro's son] can take the car." Further, upon delivery of the Vehicle, Ms. Muro was required to insure the Vehicle (Sanchez Deposition - p.46, line 11; p.47, line 6). It goes without saying that one cannot insure property without an ownership interest. Thus, for purposes of the U.C.C., Ms. Muro was a "debtor" and The Car Shack was a "secured creditor."

The claim of Ms. Muro under the U.C.C. is aptly illustrated in the recent case of Singleton v. Stokes Motors, Inc., 595 So.2d 461 (S.C. 2004). In Singleton, the Supreme Court of South Carolina described the questionable sale and finance practices engaged in by many dealerships as follows:

> First, Stokes' practice of having customers two contradictory documents — unconditional sales contract and a conditional bailment agreement — is an essential part of conducting what is commonly referred to as a "yo-yo" sale. The "yo-yo" or "spot delivery" sale typically proceeds in the following way:
>
>> The consumer believes a vehicle's installment or sale is final and the dealer gives the consumer possession of the car "on the spot." The dealer later tells the consumer to return the car because the financing has fallen through. If the consumer does not return the vehicle or agree to rewrite the transaction on less favorable terms, the dealer repossesses the vehicle. *National Consumer Law Center*, Unfair and Deceptive Acts and Practices, 316 (5th Ed. 2001).

Id. at 467.

The Singleton Court went further and stated:

Usually, the dealer will want to hide the one-sided nature of the transaction. It does not want consumers to think that they can get out of a deal just because a

>dealer can, so the dealer will not disclose that the deal, from the dealer's point of view, is not final.

Id. quoting *National Consumer Law Center*, Unfair and Deceptive Acts and Practices, at 317.

As in the instant case, the buyers of an automobile were told by the dealership that their financing was not approved. Thereafter, the dealership repossessed the vehicle. The unhappy buyers went to the dealership to demand the return of their Eight Hundred ($800.00) Dollar downpayment and a trade-in. Much like The Car Shack, the dealership in Singleton Motors claimed a right to the downpayment for some sort of set-off repairs to the trade-in. Id.

The South Carolina Supreme Court affirmed the trial court's finding that the dealership could be held liable for disposing of a repossessed "yo-yo" sale vehicle without providing the requisite predisposition notice under Article IX, U.C.C. Id. at 464. Even more sobering is the fact that the Court also upheld statutory damages for each of the two purchasers of the vehicle. Id.

The Car Shack did not provide the required disclosures of its intent to dispose of the Vehicle prior to its disposition. Ms. Muro had an interest in the Vehicle as she paid a substantial portion of the sales price by way of the downpayment. In its Memorandum, The Car Shack does not even offer a response to the failure to comply with Florida Statutes §§679.613 and 679.614. As the notice of disposition fails to even come close to complying with the U.C.C., The Car Shack must suffer the consequences in the form of statutory damages.

### III.   CONCLUSION

Based on the foregoing, Plaintiff, Lourdes Muro, respectfully moves this Court to grant partial summary judgment as to her claims for relief under the Truth in Lending Act and the Uniform Commercial Code.

        Respectfully submitted,

        /s/ Robert W. Murphy
        Robert W. Murphy
        Florida Bar No. 717223
        1212 SE 2nd Avenue
        Fort Lauderdale, Florida 33316
        (954) 763-8660 Telephone
        (954) 763-8607 Telefax
        E-mail: rphyu@aol.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 24, 2007, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on Aaron R. Sobel, Esquire, 2020 NE 163rd Street, Suite 300, North Miami Beach, FL 33162, in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic filing.

        /s/ Robert W. Murphy
        Robert W. Murphy
        Florida Bar No. 717223
        1212 S.E. 2nd Avenue
        Ft. Lauderdale, FL 33316
        (954) 763-8660 Telephone
        (954) 763-8607 Telefax
        E-mail: rphyu@aol.com